HOOVER, INC.,                          )
                                       )
        Petitioner/Appellant           )      Appeal No.
                                       )      01A01-9506-CH-00277
v.                                     )
                                       )
METRO BOARD OF ZONING APPEALS,         )      Davidson Chancery
et al.,                                )      County No. 92-1993-III
                                       )
        Respondent/Appellee            )

FILED

Jan. 5, 1995

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE CHANCERY COURT, PART THREE

AT NASHVILLE, TENNESSEE

THE HONORABLE ROBERT S. BRANDT, CHANCELLOR

THOMAS V. WHITE                    ROGER A. HORNER
Tune, Entrekin & White             P.O. Box 788
Twenty-First Floor                 Brentwood, Tennessee 37024-0788
First American Center                ATTORNEY FOR RESPONDENT/APPELLEE
315 Deaderick Street                 CITY OF BRENTWOOD
Nashville, Tennessee 37219
  ATTORNEY FOR PETITIONER/APPELLANT
                                   JAMES D. PATERSON
GEORGE A. DEAN                     306 Court Square
Parker, Lawrence, Cantrell & Dean  Franklin, Tennessee 37064
200 Fourth Avenue, North             ATTORNEY FOR RESPONDENT/APPELLEE
5th Floor, Noel Place                WILLIAMSON COUNTY
Nashville, Tennessee 37219
  ATTORNEY FOR PETITIONER/APPELLANT
                                   Herbert R. Rich
JAMES L. MURPHY III                213 Third Avenue, North
STEPHEN NUNN                       Nashville, Tennessee 37201-1680
204 Metropolitan Courthouse          ATTORNEY FOR RESPONDENT/APPELLEE
Nashville, Tennessee 37201           PAUL JOHNSON
  ATTORNEYS FOR RESPONDENT/APPELLEE
  METROPOLITAN BOARD OF ZONING APPEALS
  METROPOLITAN GOVERNMENT OF NASHVILLE
  AND DAVIDSON COUNTY

ROBERT H. JENNINGS, JR.
JAMES R. TOMKINS
Jennings and Tomkins
Suite 2240-L&C Tower
Nashville, Tennessee 37219
  ATTORNEYS FOR RESPONDENT/APPELLEE
  EDWARD KNIGHT, BEVERLY KNIGHT, JAMES
  PHILLIP CARTER, MARIDEE CARTER, MARIE
  CARTER, WILLIAM CARTER, MARY JANE
  CARTER AND STOP THE QUARRY

REVERSED AND REMANDED

SAMUEL L. LEWIS, JUDGE

This is an appeal by petitioner/appellant, Hoover Inc. ("Hoover"), from an order of the chancery court affirming the Metropolitan Board of Zoning Appeal's decision to deny Hoover's application for a conditional use permit.

The pertinent facts are as follows. On 23 April 1992, Hoover filed an application for a conditional use permit with the Metropolitan Board of Zoning Appeals ("the Board"). Hoover wanted the permit in order to build a stone processing plant and related plants at 6682 Nolensville Road.[1] To aid it in its decision, the Board asked for comments from various public offices and held a public hearing on 28 May 1992. At the hearing, Hoover presented evidence to prove that its project complied with the Zoning Regulations of the Metropolitan Government of Nashville and Davidson County. Opponents to Hoover's application also presented evidence showing that Hoover had not fulfilled the necessary requirements. Needless to say, Hoover's application generated a great deal of public concern and action.

At the conclusion of the hearing, the board members voted as follows: 2 against, 0 in favor, 3 abstentions,

---

[1] The area at issue is a AR2a zone district, an agriculture and residential area with a two acre minimum.

and 1 absent. Hoover needed four concurring votes in order to prevail. Typically, there are seven persons on the Board. Prior to the public hearing, however, one member resigned leaving a vacancy. Of the six remaining members, board member Hoover, president of appellant, did not attend the hearing because of the obvious conflict of interest and board members Spann and Karr abstained because they felt it was inappropriate for them to vote on the matter unless board member Hoover resigned from the Board.

Four months before the hearing board members Spann and Karr sent a letter to board member Hoover explaining their position. Subsequently, they met with board member Hoover and again explained their decision to abstain. Despite their predisposition, both board members attended the meeting "to allow a quorum to be present so that the matter could be heard [on that night] rather than lingering on for several months."

After the hearing, the Board entered an order denying the application pursuant to section 17.16.060 of the Zoning Regulations of the Metropolitan Government of Nashville and Davidson County Tennessee. The applicable portion of that regulation provides as follows:

> The presence of four members shall
> constitute a quorum and the concurring vote of
> at least four members of the board shall be

> necessary to deny or grant any application before the board. In the event that five or more members are present, failure to receive four concurring votes within thirty days of the public hearing shall be deemed a denial.

Zoning Regulations of the Metropolitan Government of Nashville and Davidson County Tennessee § 17.16.060(A)(hereinafter Zoning Regulations). Board members Karr and Spann knew of this rule. Thus, they knew that Hoover could not get the permit if they abstained because, after taking into account the vacancy and board member Hoover's conflict, there were only three votes left.

Hoover appealed the Board's decision to the Davidson County Chancery Court under a common law writ of certiorari. Later, the chancery court entered an order allowing several private parties[2], Stop the Quarry, Paul Johnson, the City of Brentwood, and Williamson County to join as respondents. In his Memorandum Opinion, dated 26 February 1993, the chancellor concluded that the Board failed to follow procedure when it allowed board members Karr and Spann to vote despite certain disqualifications. Further, the chancellor concluded that the Board's failure to make findings of fact precluded judicial review. Based on these conclusions, the chancellor remanded the case to the Board for a new hearing.

---

[2] The private individuals included Edward Knight, Beverly Knight, James Phillip Carter, Maridee Carter, Marie Carter, William Carter, and Mary Jane Carter. Hereinafter, this opinion will refer to these individuals as "the Citizens."

All of the respondents appealed the chancellor's decision to the Court of Appeals for the Middle Section. At the time of oral argument, the Western Section was sitting in Nashville. The Western Section stated that the issue was "whether the Board failed to make a legally effective decision regarding Hoover's application." *Hoover, Inc. v. Metropolitan Bd. of Zoning Appeals, et. al*, No. 01A01-9307-CH-00312, 1994 WL 260693, at *2 (Tenn. App. 15 July 1994). In resolving this issue, the court only addressed those conclusions made by the chancellor. The Western Section reversed the chancery court and held that the Board properly allowed both Karr and Spann to participate in the decision. *Id.* In addition, the Western Section found that it was not necessary for the Board to make any findings of fact because "the Board failed to obtain a concurring vote (either affirmatively or negatively)." *Id.* at *3. In support of this conclusion, the court cited, with approval, *Mayor and City Council of Baltimore v. Bierman*, 50 A.2d 804 (Md. 1947) and *Sokolis v. Zoning Board of Appeals of Springfield*, 157 N.E.2d 427 (Ill. App. Ct. 1959). The Western Section found that the Board's decision was legally effective and remanded the case to the chancery court "to review the Board's decision on its merits." *Hoover*, 1994 WL at *3.

5

On 22 February 1995, the chancellor filed a Memorandum Opinion holding that Hoover did not establish that the plan satisfied the general requirements.[3]  In addition, the chancery court found that Hoover's reclamation plan was inappropriate and that Hoover did not establish that the area was "sparsely developed."[4]  As a result, the chancery court entered final judgment affirming the Board's decision.

Hoover filed its notice of appeal on 22 March 1995. The Citizens and Stop the Quarry filed a brief together, and the Board and the Metropolitan Government of Nashville and Davidson County also filed a brief.

---

[3]  The "general requirements" referred to throughout this opinion are found at section 17.124.040 of the Zoning Regulations.  This section states as follows:

> A conditional use permit shall be granted provided the board finds that it:
> A.  Is so designed, located, and proposed to be operated that the public health, safety and welfare will be protected;
> B.  Will not adversely affect other property in the area in which it is located;
> C.  Is within the provision of "conditional uses" as set out in this title; and
> D.  Conforms to all applicable provisions of this title for the district in which it is to be located and necessary for public convenience in that location. (Prior code Appx. A § 103.21)

Zoning Regulation § 17.124.040.

[4]  The "specific requirements" at issue in this case are found in section 17.124.330 and include the following:

> A.  The location of such an activity shall be in an area sparsely developed and likely to remain sparsely developed during the length of time the sawmill, mining or quarrying activity is anticipated and no new location shall be considered within a one-mile radius of an existing quarry.
> B.   Any permit issued under this chapter shall be based on a site plan or other documents submitted with an application which shall provide for the following:
> . . . .
> 8.  Finished contours of the site after the quarrying operation has been terminated.  The site shall be graded and/or filled so as to be in substantial conformity with the topography of the surrounding lands.  All fill material shall be nontoxic, nonflammable, and noncombustible solids.  All areas that are backfilled shall be left so that adequate drainage is provided.

Zoning Regulation § 17.124.330 (A),(B)(8).

All of the other parties filed notices of intent to join in the brief of the Citizens and Stop the Quarry.

The parties presented a variety of issues. Nevertheless, the only issue raised by a writ of common law certiorari is whether the Board exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. *Hoover Motor Exp. Co. v. Railroad & Pub. Utils. Comm'n, et. al*, 261 S.W.2d 233, 238, 195 Tenn. 593, 604-5 (1953); Tenn. Code Ann. §27-8-101 (1980). Moreover, upon a common law writ of certiorari, a court is not to weigh the evidence. *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980), *cert. denied*, 450 U.S. 983 (1981).

During oral argument, there seemed to be some confusion as to whether the chancery court or the Western Section had addressed this issue. It is the opinion of this court that neither court considered the issue. The chancery court simply decided that it could not review the Board's decision because it was not legally effective without findings of fact. The Western Section then reversed the chancery court and held that the Board's decision was legally effective and subject to judicial review. Up to this point, neither court had addressed the issue of whether the Board's decision was illegal, arbitrary, or fraudulent.

7

The decision of the chancery court, entered on 22 February 1995, addressed the issue presented by a common law writ of certiorari, but was without affect. To explain, the chancellor applied the correct law to the wrong facts. In his opinion, the chancellor correctly stated that the standard of review was whether there was any material evidence to support the Board's decision. In other words, if a reviewing court finds that there was no material evidence to support an administrative body's decision, the reviewing court must conclude that the administrative body acted illegally. *Watts*, 606 S.W.2d at 276-77; *Hoover Motor Exp. Co.*, 261 S.W.2d at 238-39.

In this case, the chancery court affirmed the decision of the Board because it found that there was material evidence to support the Board's conclusions that Hoover's plan did not meet the general requirements, that it did not establish that the area was sparsely developed, and that it did not include an appropriate reclamation plan. The problem with the chancery court's decision is that these conclusions were not the reasons given by the Board for denying the permit. The denial was by operation of law. It had nothing to do with whether Hoover had met the specific or the general requirements.

It is the position of this court that a reviewing

court can not determine whether the decision of an administrative body is supported by material evidence unless the administrative body makes findings of facts setting forth the reasons for its decision. We do not express an opinion as to whether the Western Section was correct in concluding that it was not necessary for the Board to set out findings of facts absent four concurring votes. Instead, it is our opinion that a reviewing court can not determine if there was material evidence to support a decision if the reviewing court is unaware of the basis for the decision. Thus, although the chancellor stated the law correctly, the law was not applicable to the facts of this case.

The issue of whether an administrative body has acted illegally, arbitrarily, or fraudulently is not limited to a determination of whether material evidence supported the administrative body's decision. An illegal, arbitrary, or fraudulent action could be any number of things. Examples include the following: 1) the failure "to follow minimum standards of due process"; 2) "the misrepresentation or misapplication of a legal standard"; 3) the making of a decision for "ulterior motives"; or 4) the violation of a constitutional standard. Ben H. Cantrell, *Review of Administrative Decisions by Writ of Certiorari in Tennessee*, 4 Mem. St. U. L. Rev. 19, 28-29 (1973). Moreover, "[w]here a petitioner for a zoning permit has

met all of the requirements of the applicable zoning resolution, and where the zoning authority denies the permit based on reasons other than the petitioner's compliance with the resolution, the [zoning authority's] action in denying the permit is arbitrary and unreasonable." ***Roger's Group, Inc. v. County of Franklin***, No. 01A01-9110-CH-00378, 1992 WL 8505, at *5 (Tenn. App. 1992); *see **Father Ryan High School, Inc. v. City of Oak Hill***, 774 S.W.2d 184, 191 (Tenn. App. 1988); ***Merritt v. Wilson County Bd. of Zoning Appeals***, 656 S.W.2d 846, 854-55 (Tenn. App. 1983). In other words, a board member can not vote to deny an application when the board member believes the applicant has met the necessary zoning requirements. Further, when an applicant has complied with the requirements of the ordinance, an administrative body may not deny the permit because of the concerns of neighboring landowners. ***Brooks v. Fisher***, 705 S.W.2d 135, 138 (Tenn. App. 1985). In this case, four of the five board members present at the public hearing expressed their beliefs that Hoover had met the legal conditions required to obtain the conditional use permit.

The most striking conduct was that of board member Emamalie. After board member Meeks moved to deny the motion, board member Emamalie seconded the motion and

10

voted to deny the permit.  Immediately preceding the taking of the vote, board member Emamalie stated as follows:

> Due to all the facts that have been placed in front of me here, I think Hoover, Inc., and based on the legal matters put before me and all the rest of the testimony, I think that they meet all the obligations for us to grant them this permit.  But as a human body here and as a person, I feel a moral obligation to the people that live out there.  And a lot of them are neighbors to me, and I think I owe them much to, as I said, disapprove this quarry.

This testimony establishes that board member Emamalie based his decision to deny the permit on something other than whether Hoover had met the required conditions.  Such a decision is arbitrary under the laws of Tennessee.

Unlike board member Emamalie, board members Spann, Karr, and Price, who also believed that Hoover had met the Zoning Requirements, abstained from the vote.[5]  It

---

[5]  Prior to the polling of the board members, board member Price made the following statement:

> My -- I guess my sympathies lie with the residents in this area. I think the way the law is structured, however, at the present time that the application by Hoover, Incorporated will probably be well taken.  I think it's obvious by people's position that at this stage of the game, that it's not going to pass.  But I think under the law in terms of requirements, that they have met the requirements.  Unfortunately, the way the law, as I read it and understand it at this point, that would say to them that once they have met those general -- those specific requirements, that they would be entitled to a conditional use permit.
> I believe that something needs to be in the law that specifically sets out what we can consider beyond that in relation to the general requirements, because I think they are only entitled to a presumption from meeting the specific requirements.
> . . . . You know, my sympathies lie with you, but I believe that the state of the law as it is right now, and looking at the cases, they're probably entitled to it.

At the conclusion of the hearing, board member Spann stated as follows:

> Ladies and gentlemen, I feel like with the conditions that could be placed on this, that Hoover would meet the legal requirements necessary to be granted a permit.
> I want to also state that that's based on my analysis of the legal interpretation. . . .

is the opinion of this court that we should treat these abstentions as if they were votes to deny the application.

Section 17.16.060 of the Zoning Regulations provides that the Board shall adopt rules for its meetings.  There is nothing in these rules regarding abstention.  There is, however, a provision which states:  "When an issue arises which is not specifically covered by these rules, the Board will be governed by Robert's Revised Rules of Order."  Metro. Bd. of Zoning App. R. of P. Rule 14 (filed in the Metro. Council Clerks Office 2 March 1992).  This book does address the issue of abstention, albeit briefly. It states:  "While it is the duty of every member who has an opinion on the question to express it by his vote, yet he cannot be compelled to do so.  He may prefer to abstain from voting, though he knows the effect is the same as if he voted on the prevailing side."  General Henry M. Robert, *Robert's Rules of Order Revised*, §46 p.193 (1971).

When a board member chooses to abstain from a vote,

---

. . . I want you to know, though, that while I feel they might legally qualify, I would be very uncomfortable having to vote for this because from a moral standpoint, I think it would be a mistake to put a rock quarry at this location.  A rock quarry is unquestionably an industrial operation.
It is the Metro zoning regulation, not Hoover, that's at fault for this.  But the regulations are wrong.

After board member Spann finished giving his statement, board member Karr stated that he concurred in the thoughts expressed by board member Spann.

12

he creates a peculiar situation. One who abstains knows that he might as well have voted for the prevailing side, but for some reason chooses to keep his decision out of the public record. Because board members realize that an abstention is essentially a vote for the prevailing side, it is the opinion of this court that it be treated as such for the purposes of determining whether an administrative body acted illegally, arbitrarily, or fraudulently.

In the instant case, there was no prevailing side. There was, however, a regulation allowing the Board to deny the application by operation of law. Board members Karr, Spann, and Price all knew of this regulation and knew that if they abstained the regulation would operate to deny Hoover the permit. Treating the abstentions as if they were denials, we must conclude that the board members acted illegally, arbitrarily, or fraudulently because they constructively denied the permit despite their beliefs that Hoover had fulfilled the zoning requirements.

There is no doubt that the public opposition to the quarry influenced the board members who abstained, but it also seems that they chose to abstain because the Zoning Regulations dissatisfied them. While it is not the position of this court to state when a board member may abstain from a vote, it is important to point out

the problems with allowing board members to abstain for any reason whatsoever.  To begin with, board members who abstain because they do not believe the law is correct are, in essence, legislating.  Allowing such action by board members is an unlawful delegation of legislative authority.  *Lobelville Special School Dist. v. McCanless*, 381 S.W.2d 273, 274, 214 Tenn. 460, 464-65 (1964).  To explain, board members Karr, Spann, and Price were able to deny Hoover a permit even though they believed Hoover had satisfied the requirements of the law.  That is, they were able to circumvent the dictates of the regulations and essentially amend the law to suit their desires.  While such a situation may not be common, the facts of this case reveal that it is certainly a possibility.  A second reason for establishing when an abstention is valid is that board members can abstain simply to save face leaving the final determination to the courts.  This destroys any purpose that could be set forth in favor of having such an administrative body.

Our final point concerns the coercive manner in which board members Spann and Karr treated board member Hoover.  Both the Zoning Regulations and the Metropolitan Board of Zoning Appeals Rules of Procedure address the issue of conflict of interest.  The Zoning Regulations states as follows:  "Any member of the board who shall have a direct or indirect interest in

any property which is the subject matter of, or affected by, a decision of the board shall be disqualified from participating in the discussion, decision, or proceedings of the board in connection therewith." Zoning Regulations § 17.16.050(C). The board's rules further state: "Any Board member who may have an interest in the issues in a given case shall publicly state that fact on the record so that either party or a member of the Board might object to his-her further participation in the case." Metro. Bd. of Zoning App. R. of P. Rule 6(B). Nowhere does it state that a board member must resign when facing a conflict of interest or that another board member may ask an interested board member to resign. Further, there is no evidence that board member Hoover did anything in contravention of the regulations or rules. Therefore, it is the opinion of this court that board members Spann and Karr acted illegally when they told board member Hoover that they would abstain if Hoover did not resign from the Board.

For the above stated reason, we reverse the decision of the chancery court and remand the case to the chancery court for any further necessary proceedings. Cost on appeal are taxed to respondents/appellees.

_____      SAMUEL L. LEWIS, JUDGE


CONCUR:


_____
HENRY F. TODD, P.J., M.S.



_____
WILLIAM C. KOCH, JR., JUDGE


16