# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 29, 2012 Session

## WASTE SERVICES OF DECATUR, LLC V. COUNTY OF LAWRENCE, ET AL.

**Appeal from the Chancery Court for Lawrence County**
**No. 1525911     Stella L. Hargrove, Chancellor**

---

**No. M2011-01947-COA-R3-CV - Filed August 14, 2012**

---

Losing proposer for solid waste management services challenges Lawrence County's decision to contract with another proposer. Because we find that the County acted arbitrarily and illegally in making its decision, we reverse the decision of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

James L. Murphy, III, Josh J. Phillips and Peter C. Sales, Nashville, Tennessee, for the appellant, Waste Services of Decatur, LLC.

Darwin A. Hindman, III, and Joshua A. Mullen, Nashville, Tennessee, for the appellee, Waste Connections of Mississippi, Inc.; Charles William Holt, Jr., Lawrenceburg, Tennessee, for the appellees, County of Lawrence and County Commission of the County of Lawrence.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Lawrence County issued a request for proposals ("RFP") on December 13, 2010 soliciting proposals for "the loading, transportation and disposal of the county's solid waste for a period of (5) years beginning March 1, 2011." The RFP included the requirements for submitting proposals, eight criteria for the evaluation of proposals, and the procedures to be used by the county in selecting a proposal. The County reserved "the right to reject any or all proposals and to award a contract based upon the best value for the County." The RFP

further stated: "This is a request for proposal, not a competitive proposal process." The contents of the RFP will be described more fully below as relevant to the issues on appeal.

The County conducted a pre-proposal meeting on January 4, 2011 to allow prospective proposers to ask questions. Representatives of Waste Services of Decatur, LLC ("WSD"), Waste Connections of Mississippi, Inc. ("WCM"), and others attended the meeting. After this meeting, the County issued an addendum to the RFP addressing several topics raised at the meeting. The addendum changed the selection process to state: "Final Selection will be made by the Lawrence County Solid Waste Committee *and the Purchasing Committee.*" (Amendments in italics). Under the RFP, the selected proposal then went to the county commission "for approval and issuance of the contract."

The County received proposals from three entities, WSD, WCM, and another company. On January 18, 2011, the purchasing committee held an open meeting at which the committee announced the pricing provisions of the three proposals. At the end of the meeting, the committee stated that it would take a week to ten days to evaluate the proposals and would then contact the proposers. On January 18, 2011, the county attorney sent e-mails to WSD and WCM to set up meetings regarding their proposals. In one e-mail to WCM, the county attorney stated:

> Let me see what I can work out. Got your earlier email. I'm at [the] river tonight but will be back in town tomorrow and will try to contact necessary parties. Sharpen your pencil. We are looking at $300,000 in repairs to transfer station. Would like for someone to build us another. Might entertain a 10 year deal if good enough. We will also be discussing with WSD.

Problems arose at this point. WCM sent an e-mail back to the county attorney expressing shock that "WSD would get another opportunity" because WCM's "bid" was lower. The county purchasing agent sought an opinion from the state comptroller's office and was advised that, under the County Purchasing Law of 1957, it was not permissible for the County to negotiate price with multiple proposers. The comptroller's office advised the County to "accept the lowest and/or best bid." On January 28, 2011, the county purchasing agent cancelled the meetings set up by the county attorney.

On February 14, 2011, the purchasing committee met and discussed the proposals. The county attorney expressed concerns that the RFP was ambiguous regarding further negotiations on price and advised the committee that it could choose one of three options: reject all of the proposals and start again, continue to negotiate with the two lower proposers, or award the contract to one proposer according to the eight criteria. Representatives from WSD and WCM addressed the committee. In response to a question from a committee

member, the county purchasing agent stated: "According to the Comptroller's office, a proposal and a bid are the same thing." The committee passed a resolution recommending that the County approve the agreement with WCM.

The county commission met on February 24, 2011 and considered the resolution from the purchasing committee. WSD and WCM addressed the county commission, and there was significant discussion about the selection process. Several commissioners expressed concern with the fairness of the process, and the county attorney stated his opinion that the proposers had been led to believe that they would have an opportunity to negotiate price prior to the final selection. A motion to reject all proposals and begin the procurement process again failed to pass. The county commission then voted to allow the purchasing agent and county executive to negotiate terms with WCM.

WSD filed a petition for writ of certiorari on March 1, 2011 asking the court to reverse the County's decision to award the contract to WCM. After a hearing in August 2011, the court issued an order denying WSD's petition, ruling simply that there was "material evidence in the record to support the County's decision and that the County did not act illegally, arbitrarily, or fraudulently."

On appeal, WSD presents a number of issues and subissues. The three main issues are (1) whether the County acted illegally, arbitrarily, and capriciously by failing to follow the evaluation procedures set forth in the RFP; (2) whether the County acted illegally, arbitrarily, and capriciously by authorizing the county executive and the purchasing agent to conduct negotiations with WCM regarding the services to be provided after the award to WCM had been approved; and (3) whether the County violated the County Purchasing Law of 1957 by issuing an RFP and failing to competitively bid the work.

STANDARD OF REVIEW

The scope of review with respect to a common law writ of certiorari is limited. *Watts v. Civil Serv. Bd.*, 606 S.W.2d 274, 276 (Tenn.1980); *Leonard Plating Co. v. Metro. Gov't of Nashville & Davidson Cnty.*, 213 S.W.3d 898, 903 (Tenn. Ct. App. 2006). A reviewing court may grant relief only when the board or agency has exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. Tenn. Code Ann. § 27-8-101; *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn.1990). The scope of review by the appellate courts is no broader than that of the chancery court in these cases with respect to evidence presented before the board. *Watts*, 60 S.W.2d at 277.

Reviewing a common law writ of certiorari "does not extend to a redetermination of the facts found by the board or agency whose decision is being reviewed." *Leonard Plating*,

213 S.W.3d at 903. Courts are not permitted to "(1) inquire into the intrinsic correctness of the decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the board or agency." *Id.* at 903-04 (citations omitted). Rather, the courts must review the board's decision to determine whether there is any material evidence to support the decision; "a decision without evidentiary support is an arbitrary one." *Id.* at 904. The determination of whether the board's decision is supported by material evidence is a question of law. *Id.* To support a board's decision, the material evidence "must exceed a scintilla of evidence but may be less than a preponderance of the evidence." *Id.*

ANALYSIS

1.

We begin by considering the impact of the County Purchasing Law of 1957, Tenn. Code Ann. § 5-14-101 *et seq.*, which has been adopted by the County. WSD argues that the County Purchasing Law of 1957 required the County to use competitive bidding rather than the RFP process.

Tennessee Code Annotated § 5-14-108(a)(1) provides, in pertinent part, as follows:

> All purchases of and contracts for purchases of supplies, materials, equipment and contractual services, and all contracts for the lease or rental of equipment, and all sales of county-owned property that has become surplus, obsolete or unusable, shall be based *wherever possible* on competitive bids.

(Emphasis added). This provision requires the County to use competitive bidding for certain purchases "wherever possible." Thus, the provision contemplates the use of other procurement procedures in situations where competitive bidding is not possible.

While there is scant caselaw in Tennessee regarding the appropriate uses of the request for proposal method of procurement rather than competitive bidding, the following general principles are instructive:

> In contrast to bids, a request for proposals (RFP) is used when the public authority is incapable of completely defining the scope of work required, when the service may be provided in several different ways, when the qualifications and quality of service are considered the primary factors instead of price, or when responses contain varying levels of service which may require subsequent negotiation and specificity. A request for proposals (RFP) is a more flexible alternative to competitive bidding for a public contract . . . .

10 McQuillin, THE LAW OF MUNICIPAL CORPORATIONS § 29.33 (3rd ed. 2012) (footnotes omitted). Courts have recognized that "services requiring scientific knowledge and professional skill do not call for the performance of work which must be submitted to competitive bidding." *Waste Mgmt., Inc. v. Wis. Solid Waste Recycling Auth.*, 267 N.W.2d 659, 665 (Wis. 1978). The rationale for this principle is that public bodies must be able to "judge the professional qualifications of those who perform services requiring scientific knowledge and professional skill." *Id.; see also Emerald Corr. Mgmt. v. Bay Cnty. Bd. of Cnty. Comm'rs*, 955 So.2d 647, 651 (Fla. Dist. Ct. App. 2007). Thus, for some matters, such as solid waste disposal, a governmental body must be able to evaluate professional qualifications.

The evaluation criteria set forth in the County's RFP are:

1. Prior experience in solid waste services, transfer station management and operation, and loading, transportation and disposal of waste.
2. Specifics of the proposal regarding the Contractor's financial stability.
3. Ability to provide the most comprehensive guarantees, performance and level of insurance coverage to the County.
4. Completeness of information requested.
5. References and reputation of Contractor.
6. Cost.
7. Contract terms and conditions.
8. Overall benefit to the County.

These criteria allow the County to consider the proposers' expertise and experience in the area of solid waste management, not price only. Based upon the nature of the services being procured and the language of Tenn. Code Ann. § 5-14-108(a)(1), we conclude that the County did not act illegally, arbitrarily, or fraudulently in opting to use the RFP process.[1]

2.

WSD next asserts that the County acted illegally, arbitrarily, and capriciously by failing to follow the procedures announced in the RFP and the pre-proposal meeting. WSD puts forth a number of ways in which the County allegedly failed to follow the prescribed procedures: by awarding the contract based solely upon the initial price instead of evaluating the proposals under the eight criteria in the RFP, by failing to follow through on further

_____

[1]According to the statements of counsel at oral argument, WSD was awarded its previous contract with the County for waste management services pursuant to an RFP process. Moreover, WSD did not object to the use of the RFP process here until it learned it was not the winning proposer.

negotiations after the submission of proposals, by failing to have the proposals reviewed by the solid waste committee, and by failing to have the purchasing committee review the proposals under the criteria set forth in the RFP. These assertions embody two basic arguments: that the County erred in failing to follow the procedures set forth in the RFP, and that the County's decision was not supported by any material evidence.

One of the grounds for relief under the common law writ of certiorari is a determination that the administrative body employed an unlawful procedure. *Demonbreun v. Metro. Bd. of Zoning Appeals*, 206 S.W.3d 42, 46 (Tenn. Ct. App. 2005). Several of WSD's objections focus upon whether the County employed an unlawful procedure in making its decision. In RFP cases, the RFP governs the relationship between the parties. *See generally EnGenius Entm't, Inc. v. Herenton*, 971 S.W.2d 12 (Tenn. Ct. App. 1997); *Danis Clarkco Landfill Co. v. Clark Cnty. Solid Waste Mgmt. Dist.*, 653 N.E.2d 646, 657 (Ohio 1995). As with competitive bidding, the fairness and public confidence promoted by the RFP process requires that all proposers be evaluated in accordance with the same rules. *See Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 842 S.W.2d 611, 616-17 (Tenn. Ct. App. 1992); *Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 737 (Tenn. Ct. App. 1989). Thus, as the parties implicitly agree in this case, the propriety of the County's procedure depends upon the terms of the RFP.

The RFP, as amended, states: "Final selection will be made by the Lawrence County Solid Waste Committee and the Purchasing Committee." It is undisputed that the County did not submit the proposals to the solid waste committee, an express requirement of the RFP. We find no merit in the County's argument that this failure is inconsequential since all of the solid waste committee members also serve on the county commission, which ultimately approved the choice of WCM. The RFP established a process, and the County failed to follow it. Without a separate meeting of the solid waste committee, it is impossible to know what action that committee would have taken. Not every procedural defect provides a basis for judicial relief under the common law writ of certiorari. *See Willis v. Tenn. Dep't of Corr.*, No. M2000-01397-COA-R3-CV, 2002 WL 1189730, at *13 (Tenn. Ct. App. 2002). In this case, however, we conclude that the County acted illegally and arbitrarily in failing to send the proposals to the solid waste committee for review.[2]

_____

[2]We find no merit in WSD's contention that the County was required to conduct further negotiations with the proposers. In making this argument, WSD relies upon the following exchange at the pre-proposal meeting:

> DP [David Peppers, representative of WSD]: It's real obvious you won't be looking at price only but there may be a negotiation period.

(continued...)

Under the common law writ of certiorari, a reviewing court "may review the record solely to determine whether it contains any material evidence to support the decision because a decision without evidentiary support is an arbitrary one." *Leonard Plating*, 213 S.W.3d at 903 (citing *Watts*, 606 S.W.2d at 276-77). We have previously stated that "a reviewing court cannot determine if there was material evidence to support a decision if the reviewing court is unaware of the basis for the decision." *Hoover, Inc. v. Metro Bd. of Zoning Appeals*, 924 S.W.2d 900, 905 (Tenn. Ct. App. 1996). In this case, we are unaware of the basis of the decision and, thus, we find no material evidence to support the decision reached by the County.

Under the RFP, the County was to evaluate each proposal under eight criteria. In arguing that the County applied the appropriate criteria, the County emphasizes the following points:

- At the pre-proposal meeting, the county purchasing agent stated: "Under Criteria of Evaluation, we're going to look at everything but cost is going to be one of the major things."
- The county purchasing agent reviewed every proposal and completed a checklist for each.
- The county purchasing agent provided the purchasing committee with her file and recommendation.
- The purchasing committee voted to send WCM's proposal to the county commission.
- The county commission heard comments from representatives from WCM and WSD and, after debate, awarded the contract to WCM "because it had a significantly lower price."

These points fail to constitute material evidence that the County's decision was based upon the RFP criteria. The checklist completed by the county purchasing agent is a list of the deadlines and documentary submissions required of each proposer. The final item on the checklist references "[a]ll other specified information required by proposal documents." This

---

[2](...continued)
Carla [Burden, county purchasing agent]: Right.

This exchange is consistent with the language of the RFP, which allows but does not require further negotiations with proposers. The RFP provides that the County "may request interviews to discuss in detail the services to be provided." Moreover, the "County reserves the right, at its sole discretion, to select as the preferred Contractor(s) for negotiations, the individual or entity who in the County's judgment, is deemed to be fully qualified and best suited among those submitting proposals . . . ." The fact that the county attorney scheduled meetings with two proposers but these meetings never took place does not establish that such meetings were mandatory under the RFP process.

statement hardly constitutes evidence of the basis for the County's decision.

Neither this checklist nor any other document in the purchasing agent's file reflects a consideration of any of the RFP criteria. In fact, the purchasing agent did not make a recommendation to the purchasing committee; she and the county attorney explained the various positions and opinions regarding the appropriate decisionmaking process, including the comptroller's advice that "a proposal and a bid are the same thing."[3] At the end of the meeting, the chair stated: "All in favor of taking the low bid, let me know by saying aye." That motion passed, and the matter was sent to the county commission. Based upon the minutes of the purchasing committee and the county commission and the other evidence in the record, there is no material evidence to reflect consideration of the eight RFP criteria.

While we agree with the County's assertion that public bodies should be accorded broad discretion in awarding contracts, the County may not act illegally or arbitrarily in making such decisions. We conclude that the County acted illegally and arbitrarily in this case by failing to follow the RFP procedures and because the decision is unsupported by material evidence.

In light of this conclusion, we decline to address the remaining issue concerning the County's post-approval negotiations with WCM.

CONCLUSION

We reverse the trial court's decision, vacate the County Commission's decision, and remand the matter to the trial court with instructions to return the case to the County for further action consistent with this opinion. We are not requiring that the County begin the process anew with a new RFP, but that is an option that the County may choose. Costs of appeal are assessed against the County, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[3]As we have previously discussed, a request for proposal and a competitive bid are not the same thing. *See infra*, section 1 of the analysis.